## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MARK W. PATTON,                     )
                                    )
                Plaintiff,          )
                                    )
        v.                          )        1:17CV368
                                    )
NANCY A. BERRYHILL,                 )
Acting Commissioner of Social       )
Security,                           )
                                    )
                Defendant.          )


## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Mark W. Patton, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 8 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 10, 12; see also Docket Entry 11 (Plaintiff's Memorandum); Docket Entry 13 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

## I.  PROCEDURAL HISTORY

Plaintiff applied for DIB, alleging an onset date of March 28, 2010. (Tr. 163-64.) Upon denial of that application initially (Tr. 66-80, 99-102) and on reconsideration (Tr. 82-98, 106-08), Plaintiff requested a hearing de novo before an Administrative Law

Judge ("ALJ") (Tr. 110-11). Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing. (Tr. 35-64.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 14-29.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-4, 287-89), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] last met the insured status requirements of the [] Act on December 31, 2015.

2. [Plaintiff] did not engage in substantial gainful activity during the period from his alleged onset date of March 28, 2010 through his date last insured of December 31, 2015.

. . .

3. Through the date last insured, [Plaintiff] had the following severe impairments: fibromyalgia, degenerative disc disease, degenerative joint disease of the right knee, carpal tunnel syndrome, and a hernia.

. . .

4. Through the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. . . . [T]hrough the date last insured, [Plaintiff] had the residual functional capacity to perform medium work . . . except [Plaintiff] can lift or carry 50 pounds occasionally and 25 pounds frequently; [Plaintiff] can stand or walk for 6 hours in an 8-hour workday; [Plaintiff] can sit for 6 hours in an 8-hour workday;

[Plaintiff] can push or pull in the limits for lifting and carrying; [Plaintiff] can occasionally stoop, kneel, crouch, and crawl; [Plaintiff] can do frequent overhead reaching; [Plaintiff] should avoid concentrated exposure to cold temperature and vibrations; [Plaintiff] should not work around hazards such as dangerous machinery or at unprotected heights.

. . .

6.    Through the date last insured, [Plaintiff] was capable of performing past relevant work as an audio-visual librarian-equipment distributor . . . . He could also return to his past relevant work as a Computer Systems Hardware Analyst . . . .   This work did not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity.

. . .

7.    [Plaintiff] was not under a disability, as defined in the [] Act, at any time from March 28, 2010, the alleged onset date, through December 31, 2015, the date last insured.

(Tr. 19-29 (bold font and internal parenthetical citations omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits."  Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited."  Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the

[Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a

_____

[1] The Act "comprises two disability benefits programs. [DIB] provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment,

_____

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

the ALJ must assess the claimant's residual functional capacity ("RFC")." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[4] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

## B. Assignments of Error

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he [ALJ] erred by affording too little weight to the opinion of Plaintiff's treating physicians" (Docket Entry 11 at 4 (underlining omitted));

2) "[t]he ALJ committed prejudicial error by not considering all of the medical and vocational evidence" (id. at 6 (underlining omitted));

3) "[t]he [ALJ's] determination that Plaintiff can perform medium work is based upon errors of law and unsupported by substantial evidence" (id. at 7 (underlining omitted)); and

4) "[t]he [ALJ] committed prejudicial error by improperly using the Medical-Vocational Guidelines of Appendix 1 [sic] and 2, to direct a conclusion of not disabled" (id. at 10 (underlining omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 13 at 5-20.)

## 1. Medical Opinion Evidence

In Plaintiff's first assignment of error, he contends that "the ALJ failed to properly address the treating physicians' information in his determination that Plaintiff did not have an impairment or combination of impairments sufficiently severe as to support an award of benefits." (Docket Entry 11 at 5.) In

particular, Plaintiff asserts that, "[w]ith respect to the orthopaedic and neurological treating physicians, the ALJ only selectively discussed their evidence and did not continue to place[] them in conjunction with the totality of [] Plaintiff's experiences and conditions. The ALJ noted the multiple system problems but ignored them upon determining his workplace limitations." (Id.)[5] Additionally, Plaintiff identifies two consultative examinations with Dr. Lynde Knowles-Jonas and treatment provided by Dr. Frank Rowan as further evidence of Plaintiff's entitlement to benefits. (See id.) According to Plaintiff, "the opinion of the Claimant's treating physician [must] be given great weight and may be disregarded only if there is persuasive, contradictory evidence." (Id. at 4 (citing Coffman v. Bowen, 829 F.2d 514 (4th Cir. 1987)).) Finally, Plaintiff has argued that "[t]here was no logical reason cited by the ALJ for disregarding the multiple physicians' opinions." (Id. at 5.) Plaintiff's contentions fall short.

As an initial matter, Plaintiff misrelies on Coffman and the "persuasive contradictory evidence" standard. (Id.) That phrasing of the "treating physician rule" no longer represents the governing

---

[5] Plaintiff does not provide the identities of the "orthopaedic and neurological treating physicians," and their identities do not otherwise appear obvious. As such, the Court need not (and, indeed, cannot) discuss evidence from any such physicians. See generally United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever holds its peace."); Hughes v. B/E Aerospace, Inc., No. 1:12CV717, 2014 WL 906220, at *1 n.1 (M.D.N.C. Mar. 7, 2014) (unpublished) ("A party should not expect a court to do the work that it elected not to do.").

standard. See Stroup v. Apfel, No. 96-1722, 205 F.3d 1334 (table), 2000 WL 216620, at *5 (4th Cir. Feb. 24, 2000) (unpublished) ("The 1991 regulations supersede the 'treating physician rule' from our prior case law."); Shrewsbury v. Chater, No. 94-2235, 68 F.3d 461 (table), 1995 WL 592236, at *2 n.5 (4th Cir. Oct. 6, 1995) (unpublished) ("As regulations supersede contrary precedent, the cases cited by [the plaintiff] defining the scope of the 'treating physician rule' decided prior to 20 C.F.R. § 416 and related regulations are not controlling." (internal citation omitted)); accord Brown v. Astrue, Civil Action No. CBD-10-1238, 2013 WL 937549, at *4 (D. Md. Mar. 8, 2013) (unpublished); Benton v. Astrue, Civil Action No. 0:09-892, 2010 WL 3419272, at *1 (D.S.C. Aug. 30, 2010) (unpublished); Pittman v. Massanari, 141 F. Supp. 2d 601, 608 (W.D.N.C. 2001); Ward v. Chater, 924 F. Supp. 53, 55-56 (W.D. Va. 1996).

Moreover, with respect to Dr. Knowles-Jonas, the Court need not apply the treating physician rule at all, as the record reflects that she evaluated Plaintiff for the purpose of a consultative examination. (Tr. 329.) Consultative examiners such as Dr. Knowles-Jonas do not constitute treating sources under the regulations, see 20 C.F.R. § 404.1527(c)(2), and thus their opinions, as a general proposition, do not warrant controlling weight, Turberville v. Colvin, No. 1:11CV262, 2014 WL 1671582, at *6 (M.D.N.C. Apr. 23, 2014) (unpublished), recommendation adopted,

slip op. (M.D.N.C. May 15, 2014) (Eagles, J.). However, the ALJ must nevertheless evaluate consultative opinions using the factors outlined in the regulations, and expressly indicate and explain the weight he or she affords to such opinions. See 20 C.F.R. § 404.1527(c) ("Regardless of its source, [the ALJ] will evaluate every medical opinion [he or she] receive[s]" and where an opinion does not warrant controlling weight, [the ALJ must] consider all of the . . . factors [in 20 C.F.R. § 404.1527(c)(1)-(6)] in deciding the weight [to] give to any medical opinion." (emphasis added)); Social Security Ruling 96-5p, Medical Source Opinions on Issues Reserved to the Commissioner, 1996 WL 374183, at *5 (July 2, 1996) ("SSR 96-5p") (noting that ALJs "must weigh medical source statements . . . [and] provid[e] appropriate explanations for accepting or rejecting such opinions" (emphasis added)).

In this case, on August 25, 2012, Dr. Knowles-Jonas completed a Medical Report. (Tr. 323-28.) In it, she noted that an evaluation of Plaintiff demonstrated the following:

> On exam, [Plaintiff's] gait was steady and he did not use an assistive device. There were palpable muscle spasms noted in the cervical and lumbar spine. Straight leg raise was positive at 15 degrees bilaterally. It appears that there are osteoarthritic changes in the bilateral knees with effusions noted on physical examination and chronic patient[-]reported pain. There was also swelling and tenderness in the bilateral knees, and multiple tender trigger points along the paraspinous muscles laterally. There was decreased range of motion in the thoracolumbar spine and bilateral knees.

(Tr. 327.) Dr. Knowles-Jonas then opined:

> [Plaintiff] can be expected to sit normally in an 8-hour
> workday with normal breaks. [Plaintiff] has mild
> limitations with standing and moderate limitations with
> walking . . . . [Plaintiff] does not need an assistive
> device with regards to short and long distances and
> uneven terrain. . . .[, and] has mild to moderate
> limitations with lifting and carrying weight due to
> bilateral knee pain and effusions, and back pain. There
> are limitations on bending, stooping, crouching,
> squatting and so on and the claimant will be able to
> perform these occasionally due to bilateral knee pain and
> effusions, and back pain. There are no manipulative
> limitations on reaching, handling, feeling, grasping,
> fingering and the claimant will be able to perform these
> frequently. There are no relevant visual, communicative
> or work place environmental limitations.

(Tr. 328.)

> The ALJ assessed the opinions of Dr. Knowles-Jonas as follows:

> The undersigned gives this opinion from Dr. Knowles-Jonas
> regarding the claimant['s] ability to walk, lift, carry
> and no environmental limitations little weight as it is
> inconsistent with the evidence as a whole, especially the
> medical evidence provided after Dr. Knowles-Jonas
> formulated this opinion. . . . The undersigned gives the
> remainder of the opinion from Dr. Knowles-Jonas,
> especially that regarding the claimant's ability to sit,
> bend, stoop, crouch, and squat, great weight as it is
> consistent with the evidence as a whole . . . . Further,
> Dr. Knowles-Jonas failed to define what mild or moderate
> limitations meant in the context of this medical source
> statement . . . . The undersigned notes that such ill-
> defined terms are of limited value in reading a function-
> by-function assessment.

(Tr. 27 (internal citations omitted).) Dr. Knowles-Jonas provided

a second opinion on October 19, 2013, which differed from the first

in that she opined that Plaintiff "ha[d] moderate limitations with

lifting and carrying weight" and "manipulative limitations." (Tr.

395.) The ALJ afforded that opinion the same weight as the first,

for the same reasons. (See Tr. 27.)

Plaintiff does not specifically attack any of the ALJ's above-quoted analysis regarding Dr. Knowles-Jonas's opinions, but rather states that "[t]he consultative examinations with Dr. Knowles-Jonas . . . noted the absence of patellar and Achilles reflexes on the right which supports the neurological limitations [Plaintiff] alleges," and that "[Dr. Knowles-Jonas] also found moderate difficulty with heel/toe walking and an inability to tandem walk." (Docket Entry 11 at 5.)  However, Plaintiff does not argue how such findings undermine the ALJ's evaluation and weighing of Dr. Knowles-Jonas's opinions.  (See id.)  The Court need not consider that argument further.  See generally United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever holds its peace."); Hughes v. B/E Aerospace, Inc., No. 1:12CV717, 2014 WL 906220, at *1 n.1 (M.D.N.C. Mar. 7, 2014) (unpublished) ("A party should not expect a court to do the work that it elected not to do.").  Moreover, the ALJ found that Plaintiff could return to his past relevant work as a computer systems hardware analyst, as generally performed at the sedentary level of exertion.  (See Tr. 28.)  As such, even if the ALJ had credited Dr. Knowles-Jonas's opinion that Plaintiff had moderate limitations on walking, Plaintiff has not shown how that limitation conflicts with the minimal walking requirements of sedentary work, see 20 C.F.R.

§ 404.1567(a) (defining sedentary work to involve only occasional walking).

Plaintiff also maintains that the ALJ should have placed more weight on treatment from Dr. Rowan's diagnoses of tendinosis and osteoarthritis. (See Docket Entry 11 at 5.) However, a diagnosis on its own does not establish a disability; rather, "[t]here must be a showing of related functional loss." Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986). Plaintiff's assertion that "it is reasonable to believe that the osteoarthritis did not improve during the last 10 years but rather progressed" (Docket Entry 11 at 5) qualifies as speculative and does not suffice to rebut the ALJ's conclusions. Moreover, Plaintiff has not explained how the ALJ's further consideration of Dr. Rowan's treatment records would have compelled the ALJ to adopt greater restrictions in the RFC. (See id.)

In short, Plaintiff has failed to demonstrate prejudicial errors with respect to the ALJ's evaluation of the opinion evidence.

### 2. COPD Diagnosis

In Plaintiff's second assignment of error, he contends that the ALJ failed to consider all available medical evidence, specifically Plaintiff's diagnosis of COPD. (See id. at 6-7.) Plaintiff argues that "[t]his condition alone would indicate that work in the medium level is inappropriate for [Plaintiff] and this

evidence was omitted from the ALJ's decision." (Id. at 7.)[6]
According to Plaintiff, "[t]he consensus of the [c]ourts addressing
this issue hold that there must be an explicit indication of the
weight accorded to the various medical reports in the record."
(Id. at 6 (citing Gordon v. Schweiker, 725 F.2d 231 (4th Cir.
1984)).)

As an initial matter, more recent Fourth Circuit case law
states that "'there is no rigid requirement that the ALJ
specifically refer to every piece of evidence in his decision.'"
Reid v. Commissioner of Soc. Sec., 769 F.3d 861, 865 (4th Cir.
2014) (quoting Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir.
2005)). If "the ALJ . . . stated that the whole record was
considered . . . absent evidence to the contrary, we take [him] at
[his] word." Id.

Although Plaintiff's treating physician diagnosed Plaintiff
with COPD (see Tr. 290), the ALJ did not discuss Plaintiff's
diagnosis of COPD in his decision, and, as a result, did not find
that COPD constituted a medically determinable impairment, whether
severe or non-severe. (See Tr. 19-22.) However, any such error by
the ALJ remains harmless under the circumstances of this case. See
generally Fisher v. Bowen, 869 F.2d 1055, 1057 (4th Cir. 1989) ("No

---

[6] Plaintiff also maintains that "the evidence should have led to a finding of
disability based on the severe musculoskeletal and neurological impairments under
the case law as well as the Medical-Vocational Guidelines." (Id. at 6.)
However, Plaintiff does not detail any evidence of other conditions that the ALJ
supposedly should have considered beyond Plaintiff's diagnosis of COPD. (See id.
at 6-7.)

principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."). Plaintiff's diagnosis of COPD does not mandate a finding of disability without "a showing of related functional loss." Gross, 785 F.2d at 1166. Here, the record contained no such showing of functional loss as a result of COPD. Indeed, although Plaintiff maintains that "[h]is [COPD] was most recently treated by Dr. Koirala in 2011 through 2015 and remains unchanged" (Docket Entry 11 at 7), Dr. Koirala's notes in the record contain no mention of COPD (see Tr. 418-30). On four separate occasions, Dr. Koirala in fact noted that Plaintiff's lungs "[were] clear to auscultation bilaterally, [with] no wheezes, rhonchi, [or] rales." (Tr. 419, 422, 426, 430.) Accordingly, the ALJ did not err in failing to discuss Plaintiff's COPD.

### 3. RFC Determination

Plaintiff further argues that "the ALJ's finding that Plaintiff can perform the modified description of medium work" lacks substantial evidence in support. (Docket Entry 11 at 7.) Specifically, Plaintiff faults the ALJ for (1) failing to take into account Plaintiff's age in determining that he could return to his past relevant work, and (2) failing to give greater weight to Plaintiff's statements regarding his symptoms. (See id. at 8-9.) These contentions do not warrant relief.

16

Plaintiff first argues that the ALJ erred in that, "while acknowledging that Plaintiff was in the advanced age category at the time of the hearing, the ALJ opined that he was capable of performing the heavy lifting associated with his prior employment." (Id. at 8.) However, Plaintiff reported as recently as May 2016 that he could lift and carry approximately 20-25 pounds frequently and 40, perhaps 60 pounds occasionally (see Tr. 35, 52-53, 324, 391), which supports the ALJ's determination that Plaintiff could lift 25 pounds frequently and 50 pounds occasionally (see Tr. 22). Moreover, the VE testified that "a hypothetical person [of the] same age, education, and past relevant work as [Plaintiff]" who could "lift or carry 50 pounds occasionally, and 25 pounds frequently" could return to his past relevant work as a "computer systems hardware analyst and audiovisual librarian or equipment distributor." (Tr. 60-61 (emphasis added).)[7] The ALJ thus did not err in this regard.[8]

---

[7] According to Plaintiff, the VE testified that "the average time missed per month by Plaintiff would preclude the availability of any substantial gainful activity." (Docket Entry 11 at 8.) The VE in fact testified that if Plaintiff missed work three to five days a month due to pain, it would render him ineligible to perform that work. (See Tr. 62.) Plaintiff has not shown that the evidence required the ALJ to find that Plaintiff would in fact need to take that many absences. (See Docket Entry 11 at 8.)

[8] Plaintiff further maintains that, although the ALJ characterized Plaintiff's former employment as a computer systems hardware analyst as sedentary (see Tr. 28), "[t]he actual evidence in the record notes that [] Plaintiff's performance of the position was much more physical and that his body could not perform the duties due to the physical stress of lifting, manipulating, and walking the required distance with the increasing musculoskeletal pain symptoms." (Docket Entry 11 at 8.) However, Plaintiff points to no particular pieces of evidence to support these contentions. (See id.) Moreover, the ALJ found that Plaintiff retained the ability to perform the analyst job both as actually performed and
(continued...)

As to Plaintiff's subjective reporting of symptoms, he states first that the ALJ should have found Plaintiff's testimony more "credible." (Docket Entry 11 at 9.) To begin, a claimant's credibility no longer plays a role in the Social Security regulations. Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304 (Oct. 25, 2017) ("SSR 16-3p"), "eliminat[ed] the use of the term 'credibility' from . . . sub-regulatory policy, . . . [and] clarif[ied] that subjective symptom evaluation is not an examination of the individual's character." Id. at *1 (emphasis added). Instead, SSR 16-3p and the Commissioner's regulations provide a two-part test for evaluating a claimant's statements about symptoms. See id. at *3; see also 20 C.F.R. § 404.1529.

First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p, 2017 WL 5180304, at *3. A claimant must provide "objective medical evidence from an acceptable medical source to establish the existence of a medically determinable impairment that could reasonably be expected to produce [the] alleged symptoms."

---

[8] (...continued)
as generally performed. (See Tr. 29.) Thus, even if Plaintiff could no longer tolerate the job as he actually performed it, the ALJ found that Plaintiff retained the RFC to perform the job as described in the Dictionary of Occupational Titles ("DOT"), i.e., at the sedentary level of exertion. See DOT, No. 033.167-010, 1991 WL 646559 (4th ed. rev. 1991). Plaintiff has not challenged the ALJ's determination in that respect. (See Docket Entry 11.)

Id. Objective medical evidence consists of medical signs ("anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques") and laboratory findings "shown by the use of medically acceptable laboratory diagnostic techniques." Id.

Upon satisfaction of part one by the claimant, the analysis proceeds to part two, which requires an assessment of the intensity and persistence of the claimant's symptoms, as well as the extent to which those symptoms affect his or her ability to work. See id. at *4. In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id. (emphasis added). Where relevant, the ALJ will also consider the following factors in assessing the extent of the claimant's symptoms at part two:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

Id. at *7-8.  The ALJ cannot "disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual."  Id. at *5 (emphasis added).

In this case, the ALJ found for Plaintiff on part one of the inquiry, but ruled, in connection with part two, that his "statements concerning the intensity, persistence and limiting effects of [his] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e] decision." (Tr. 24.)  In that regard, the ALJ concluded that the evidence as a whole, including Plaintiff's subjective complaints, did not merit a lower RFC than medium work.  (See Tr. 25.)  Plaintiff challenges this determination, arguing that the ALJ should have given more weight to "testimony by the Plaintiff of his pain and personal abilities not limited to those in the formal medical assessment." (Docket Entry 11 at 9.)  However, Plaintiff points to no specific pieces of such testimony

20

(see id.), and the Court cannot comb through the transcript to find testimony that might support Plaintiff's argument.  See Zannino, 895 F.2d at 17 ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever holds its peace."); Hughes, 2014 WL 906220, at *1 n.1 ("A party should not expect a court to do the work that it elected not to do.").[9]

In sum, the Court should find no basis for granting relief on this claim.

### 4. Application of Grids

Plaintiff finally contends that, had the ALJ properly applied the Medical-Vocational Guidelines, or "Grids," 20 C.F.R. Pt. 404, Subpt. P, App'x 2, he would have found in Plaintiff's favor.  (See Docket Entry 11 at 10.)[10]  However, the Grids apply "in cases where a person is not doing substantial gainful activity and is prevented by a severe medically determinable impairment from doing

---

[9] Notably, the ALJ found that Plaintiff could return to his past relevant work as a computer systems hardware analyst, which requires a physical-exertion level of "sedentary."  (See Tr. 28.)  Accordingly, Plaintiff had to show that his physical impairments not only warranted a restriction to less than medium work, but also precluded even performance of that sedentary job.  He has not done so. (See Docket Entry 11 at 9.)

[10] "The Grids categorize jobs by their physical-exertion requirements, namely, sedentary, light, medium, heavy, and very heavy.  There are numbered tables for the sedentary, light, and medium level (tables 1, 2, and 3, respectively), and a specific rule for the heavy and very heavy levels.  Based on the claimant's RFC, the ALJ must first determine which table to apply, i.e., if the claimant's RFC limits him to a sedentary exertional level, then Table No. 1 is the appropriate table.  Next, based on the claimant's age, education, and previous work experience, the [table or] rule directs a finding of 'disabled' or 'not disabled.'"  Black v. Astrue, No. 3:09CV599, 2010 WL 2306130, at *4 (E.D. Va. Apr. 26, 2010) (unpublished) (internal citations and footnotes omitted), recommendation adopted, 2010 WL 2306136 (E.D. Va. June 3, 2010) (unpublished).

21

vocationally relevant past work." 20 C.F.R. § 404.1569 (emphasis added). "The Grids are relevant only at step five of the [SEP]. Where substantial evidence supports the ALJ's step four finding regarding [past relevant work], the ALJ was under no obligation to proceed to step five of the [SEP]." Cook v. Colvin, No. 1:11-CV-87, 2014 WL 317847, at *4 (M.D.N.C. Jan. 29, 2014) (unpublished).

Here, the ALJ ended the SEP at step four, finding that Plaintiff could perform his past relevant work. (See Tr. 28.) With respect to the particular past relevant work identified by the ALJ, the VE testified that a hypothetical person with the same RFC as Plaintiff could work as a computer systems hardware analyst and as an audiovisual librarian or equipment distributor. (See Tr. 60-61.) Plaintiff does not challenge the VE's testimony in this regard, instead highlighting examples of "both non-exertional limitations and exertional limitations" from which he allegedly suffers. (Docket Entry 11 at 11.) However, Plaintiff presents no argument connecting these limitations to any aspects of job performance (much less any showing that he cannot perform the sedentary-level exertion required by one of the cited jobs), and, in any event, substantial evidence supports the ALJ's findings at step four, rendering the Grids inapplicable.

### III. CONCLUSION

Plaintiff has not established an error warranting reversal or remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 10) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 12) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

August 22, 2018